J-S46027-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SANDRA ROMAN | : | |
| | : | |
| Appellant | : | No. 76 EDA 2019 |

Appeal from the Judgment of Sentence Entered November 30, 2018
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s):  CP-39-SA-0000282-2017

BEFORE:   PANELLA, P.J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:                    **FILED JUNE 23, 2020**

Sandra Roman appeals from the judgment of sentence imposed following her *de novo* conviction of ten improper vehicle title transactions.[1] She chiefly asserts that the search of her title records was illegal because the investigating state trooper should have first obtained a search warrant. She claims the trial court erred in denying her motion to suppress. Roman also

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Specifically, the trial court found Roman guilty of three counts of violating 75 Pa.C.S.A. § 1111(b)-Transfer of Ownership of Vehicles, three counts of 75 Pa.C.S.A. § 1119(b)-Application of Certificate of Title by Agent, one count of 75 Pa.C.S.A. § 1119(c)(l)- Persons Not Authorized to Hold Certificate of Title, and three counts of 75 Pa.C.S.A. § 1161(b) - Certificate of Salvage Required. Roman was previously convicted of the same offenses in magisterial district court.

challenges the weight of the evidence, and certain evidentiary rulings. We affirm.

We derive the facts of the case from the trial court opinion and our own independent review of the record. For a more detailed explanation of the particular facts at issue in each of the ten citations, we respectfully refer the reader to the trial court opinion. *See* Trial Court Opinion, 2/27/19, at 1-35.

Appellant Sandra Roman is the manager of the A to Z Auto business in Allentown, Pennsylvania. As a statutory requirement to act as an agent in vehicle title business for the Commonwealth of Pennsylvania Department of Transportation (PennDOT), A to Z Auto had executed an Agent Services Agreement with PennDOT.[2] Notably, in section 26 of the Agreement PennDOT reserved the right to perform audits and inspections of documents related to the performance of title services by the agent.

Roman's convictions arose out of the discovery of ten sets of improper vehicle title documents, which Pennsylvania State Trooper Mark Rode, a vehicle fraud investigator, obtained on site at A to Z Auto's place of business.

---

[2] The Agreement was signed on October 17, 2011 by Milagros Roman, d/b/a A to Z Auto. Milagros is the mother of Appellant Sandra Roman and her sister, fellow employee, Julisa Roman. *See* N.T. Summary Appeal, 9/28/18, at 7; *see also* Trial Court Opinion, 2/27/19, *infra* at 3.

Trooper Rode took the records after first responding to an unrelated consumer complaint of delay in the transfer of title.[3]

The trial court summarized the basic facts of the case as follows:

Trooper Rode testified that as a vehicle fraud investigator his duties include "inspecting notaries, car dealers, inspection garages, just making sure they adhere to the Commonwealth rules and regulations as inspection stations, as notaries and the care business . . . and make sure that the titles are performed -- are executed properly." Trooper Rode testified that on the afternoon of June 19, 2017, he went to A to Z Auto, to investigate a specific complaint (unrelated to this case), but that it is also his policy to inspect all the records of the facility. Trooper Rode indicated that part of his job is to do "random audits and inspections" of motor vehicle businesses. There [at A to Z Auto] he met with Julisa Roman, the Appellant's sister, who he asked to see the records related to vehicle tags and the titles for all vehicles that are held for sale. He further testified that Julisa Roman provided him with documents related to vehicle tags, but said that Appellant, Sandra Roman, handled the title documents. Trooper Rode indicated that Julisa Roman called Appellant and asked her to come to the scene [at A to Z Auto].

Appellant [Sandra Roman] testified that she is the manager for A to Z Auto. Trooper Rode testified that when Appellant arrived, he told her that he wanted to review the title records to make sure A to Z Auto was in compliance with PennDOT requirements. Trooper Rode testified that he had authority under the audit provision of the Agent Services Agreement with PennDOT and under 75 Pa.C.S. § 6308 - Investigation by police officers. Trooper Rode testified that Appellant initially did not comply, but thereafter provided him with the documents that are the subject of the ten citations in this case.

Trial Court Opinion, at 1-3 (record citations omitted).

---

[3] The initial investigation of title delay was closed without citation.

- 3 -

On inspection, Trooper Rode found numerous irregularities in the title documents. For example, several of the titles were signed by the seller, but not the buyer, which constitutes an "open" title not permitted by the applicable legal requirements that require simultaneous execution. The trial court denied Roman's motion to suppress the title records.

At trial, Roman offered to submit various affidavits from her customers, who were vehicle owners. Several of these affidavits were prepared three months after the fact, and asserted that Roman was in their "employ" for purposes of repairing or servicing their vehicles. Roman argued that these affidavits eliminated the requirement of title transfer. Roman proffered the affidavits to show the affiants' "state of mind." **See** Appellant's Brief, at 15; **see also** Pa.R.E. 803(3). None of the affiants was present at the trial. The trial court sustained the Commonwealth's objection that the affidavits were inadmissible hearsay.

Roman testified on her own behalf. Her sister Julisa and Trooper Rode also testified. Roman offered various, and sometimes changing, explanations of why her title records were defective. However, she could not provide any documentation to support her claims.

The trial court repeatedly found Trooper Rode's testimony to be credible and Appellant's testimony not credible. As a result, it convicted her of ten violations, and sentenced her to pay $2,300 in fines, plus court costs. Roman

did not file a post-sentence motion. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.[4]

On appeal, Roman presents four overlapping questions and five sub-questions for our review. We reproduce them verbatim except for the omission of unnecessary capitalization.

> I. Did the trial court err in denying Appellant's motion to suppress the evidence, the certificates of title and salvage, as fruits of an illegal search by trooper?
>
> A. Did Trooper require a search warrant to perform a search of the certificates of title in Appellant's possession?
>
> B. Did any applicable exceptions exist to allow Trooper to conduct his search of the vehicle titles without a search warrant?
>
> II. Did the trial court err in finding defendant guilty in citations T 4235350-0, T 4235487-5, T 4235544-5, and T-4235546-0 of violating 75 Pa. C.S. § 1119(b)(1) and §1119(c)1?
>
> A. Did the trial court err in sustaining the Commonwealth's objection to Appellant entering into evidence an affidavit from the owner of the vehicle that is the subject of Citation T 4235350-0, which demonstrated that Appellant was in the employ of the owner and was therefore permitted to hold the Certificate of Title despite it not being in Appellant's name under 75 Pa. C.S. § 1119(c)(1)?
>
> B. Did the trial court err in finding Appellant guilty of Citation T 4235487-5, of violating 75 Pa. C.S. § 1119(b)(1) because the verdict was against the weight of the evidence?

---

[4] It bears noting that Roman originally presented twenty-six claims in the Rule 1925(b) statement of errors. *See* Concise Statement of Errors, 1/31/19; *see also* Pa.R.A.P. 1925.

C. Did the trial court err in finding Appellant guilty at Citations T 4235544-5, and T-4235546-0 by sustaining the Commonwealth's objections to Appellant offering Affidavits from the vehicle owners into evidence showing that Appellant [was] in the employ of the owners and therefore permitted under §1119(b)(1) to hold the titles?

III. Did the trial court err in finding Appellant guilty of violating 75 Pa.C.S. §1161(b) in citations T 4235489-6, T 4235488-5, and T-4235545-6, when the verdict was against the weight of the evidence as it found Appellant guilty of conduct not expressed in the statute?

IV. Did the trial court err in finding Appellant guilty of 75 Pa. C.S. §1111(b) at citations T 5351-1, T 4235541-2, and T 4235432-5?

Appellant's Brief, at 8-11.

Primarily, Roman claims the improperly completed, or incomplete, certificates of title were the fruits of an illegal search, because Trooper Rode should have obtained a search warrant before obtaining and examining the records. She further asserts that the trial court erroneously denied her motion to suppress.

Our review of Roman's challenge to the denial of her motion to suppress is guided by the following legal principles.

Our standard of review in addressing a challenge to a trial court's denial of a motion to suppress is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn from them are in error.

*Commonwealth v. Van Winkle*, 880 A.2d 1280, 1282–83 (Pa. Super. 2005) (citations omitted).

The trial court concluded that Trooper Rode's search was authorized under two independent bases. First, the court determined that the Agent Services Agreement with PennDOT established Roman's consent to the search. Roman disputes that the Agent Services Agreement authorized the trooper to examine vehicle records without obtaining a search warrant.

Resolution of this issue therefore requires interpretation of the Agent Services Agreement. The interpretation of a contract "is a matter of law and an appellate court need not defer to the conclusions of the trial court. Moreover, when the terms of a contract are clear and unequivocal, meaning must be determined from the language itself." *Beemus v. Interstate Nat. Dealer Services, Inc.*, 823 A.2d 979, 982 (Pa. Super. 2003) (citation omitted). Furthermore,

> [w]hether a trial court properly interpreted a contract is a question of law and this Court's scope of review is plenary. We need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement.

*Liddle v. Scholze*, 768 A.2d 1183, 1185 (Pa. Super. 2001) (citations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court, we conclude

that there is no merit to this issue. The trial court opinion properly disposes of the question presented. **See** Trial Court Opinion, 2/27/19, at 17-20, (concluding that multiple paragraphs of the Agent Services Agreement supported a determination that Roman consented to unannounced audit of vehicle title records). We adopt the trial court's analysis as our own and affirm on that basis.

As the court properly concluded Trooper Rode's search was justified by the Agent Services Agreement, we need not reach Roman's challenge to the trial court's alternative basis for denying suppression. However, in the interest of thoroughness, we note that the court was correct in this context as well.

The court found that 75 Pa.C.S.A. § 6308(d)(1) authorized Trooper Rode's search. In contrast, Roman maintains that section 6308 does not apply because the purpose of the investigation and search was not administrative, but rather to obtain evidence of criminal activity, citing **Commonwealth v. Hudak**, 710 A.2d 1213 (Pa. Super. 1998). **See** Appellant's Brief, at 24-27. We disagree.

Section 6308(c)(2) provides that any police officer may inspect the records that the statute sets forth in subsection (d). Subsection (d) identifies the records subject to audit as "records of the purchase, acquisition, sale and disposition of vehicles …" **Id**. We agree with the trial court's conclusion that this statute provided authority for Trooper Rode to audit the title records.

Additionally, **Hudak** does not dictate a differing result. **Hudak** is distinguishable on its facts. Unlike **Hudak**, this was not an investigation of suspected trafficking in stolen auto parts. **See Hudak**, 710 A.2d at 1213, 1217. To the contrary, Trooper Rode, a vehicle fraud inspector with nine years of specialized experience, testified that he was engaged in a permitted routine administrative inspection to insure agent compliance with Pennsylvania law on title transfers. The trial court found his testimony credible. We defer to the credibility determinations of the trial judge who had the opportunity to observe the witnesses' credibility. **See Commonwealth v. Wright**, 867 A.2d 1265, 1267 (Pa. Super. 2005). Appellant asserts, but fails to develop or support, an argument in support of her claim of pretext. **See** Appellant's Brief, at 24-25.

In her next issue, Roman challenges the trial court's decision to preclude the admission of the affidavits allegedly signed by her customers. The court found that these affidavits constituted hearsay, and that no valid exception to the rule against hearsay justified their admission. Roman argues that the affidavits were admissible as statements of the customers' states of mind at the time they transferred possession of their vehicles to A to Z.

> A trial court has broad discretion to determine whether evidence is admissible and a trial court's ruling on an evidentiary issue will be reversed only if the court abused its discretion. Accordingly, a ruling admitting evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous. If the evidentiary question is purely one of law, our review is plenary.

***Commonwealth v. Belani***, 101 A.3d 1156, 1160 (Pa. Super. 2014) (citations

omitted).

> Hearsay is "a statement that (1) the declarant does not make
> while testifying at the current trial or hearing; and (2) a party
> offers in evidence to prove the truth of the matter asserted in the
> statement." Pa.R.E. 801(c). It is not admissible as evidence unless
> an exception to the hearsay rule applies. ***See*** Pa.R.E. 802; ***see***
> ***also*** Pa.R.E. 802, 803, 803.1, and 804. One of the exceptions to
> the rule against hearsay is the state of mind exception:
>
>> A statement of the declarant's then-existing state of mind
>> (such as motive, intent or plan) or emotional, sensory, or
>> physical condition (such as mental feeling, pain, or bodily
>> health), but not including a statement of memory or belief
>> to prove the fact remembered or believed unless it relates
>> to the validity or terms of the declarant's will.
>> Pa.R.E. 803(3).

***Commonwealth v. Fitzpatrick***, 204 A.3d 527, 532 (Pa. Super.

2019), *reargument denied* Apr. 23, 2019.

After a thorough review of the record, the briefs of the parties, the

applicable law, and the well-reasoned opinion of the trial court, we conclude

that there is no merit to this issue. The trial court opinion properly disposes

of the question presented. ***See*** Trial Court Opinion, 2/27/19, at 28-30

(concluding that the affidavits did not qualify under Rule 803(3) because they

were prepared in contemplation of litigation and therefore lacked the required

spontaneity). We adopt the trial court's analysis as our own and affirm on that

basis.

In her final issue on appeal, Roman asserts that several of her

convictions were against the weight of the evidence presented at trial. "A

- 10 -

challenge to the weight of the evidence must be raised with the trial judge or it will be waived." ***Commonwealth v. Gillard***, 850 A.2d 1273, 1277 (Pa. Super. 2004). In order to preserve a weight of the evidence claim, it must be raised either prior to sentencing in front of the trial court or after sentencing in a post sentence motion. ***See*** Pa.R.Crim.P. 607(A). "As this Court concluded in ***Commonwealth v. Washington***, 825 A.2d 1264, 1266 (Pa. Super. 2003), Rule 607 clearly requires that such a claim be raised initially by a motion to the trial court, and the failure to do so compels this Court to find the issue waived, even if it was ultimately addressed by the trial court in its Rule 1925(a) opinion." ***Gillard***, 850 A.2d at 1277.

Roman did not file a post-sentence motion preserving this challenge, and the record does not reveal any other instance where Roman preserved this issue for our review. As a result, all of Roman's challenges to the weight of the evidence are waived for failure to raise them in a timely manner with the trial court. ***See Gillard***, 850 A.2d at 1277.[5]

Accordingly, we affirm on the basis of the trial court's opinion.

---

[5] In any event, we note that the trial court concluded that Roman failed to demonstrate that the determination of guilt was so contrary to the evidence as to shock one's sense of justice. ***See*** Trial Court Opinion, at 35. The court found Trooper Rode to be an honest and forthright witness, whose testimony was corroborated by the relevant documents. ***See id***. In contrast, the court found that Roman's testimony was vague, implausible, and unsubstantiated. ***See id***. We cannot conclude that the trial court's reasoning constitutes an abuse of discretion.

- 11 -

Judgment of sentence affirmed.

Judge Colins joins the memorandum.

Judge Olson files a dissenting memorandum.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/23/2020

**IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA**
**CRIMINAL DIVISION**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA,) | No. SA-282-2017 |
| Plaintiff/Appellee ) | |
| ) | |
| vs. ) | |
| ) | |
| SANDRA ROMAN, ) | ASSIGNED TO: |
| Defendant/Appellant ) | The Honorable Michele A. Varricchio |

**Pa.R.A.P. 1925(a) OPINION**

AND NOW, this 27ᵗʰ day of February, 2019, the undersigned enters the following

opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a):

The Appellant has appealed to the Superior Court of Pennsylvania from this Court's

Order of Sentence imposed on November 30, 2018 in the above-captioned matter at Docket

Number 76 EDA 2019. Pursuant to Pa.R.A.P. 1925(a), the undersigned enters the following

statement providing its reasons for the Sentence Order in question.

On September 26, 2017, after a summary trial held before Magisterial District Judge

Patricia Engler, Appellant, Sandra Roman, was found guilty of three counts of 75 Pa.C.S.

§ 1111(b) – Transfer of Ownership of Vehicles,[1] three counts of 75 Pa.C.S. § 1119(b) –

Application of Certificate of Title by Agent,[2] one count of 75 Pa.C.S. § 1119(c)(1) – Persons Not

Authorized to Hold Certificate of Title,[3] and three counts of 75 Pa.C.S. § 1161(b) – Certificate of

Salvage Required.[4] For all ten offenses, Appellant was sentenced to pay $3,643.00 in fines and

---

[1] See Citation No. 4235351-1 corresponding to Docket No. MDJ-31101-TR-2427-2017, Citation No. 4235432-5 corresponding to Docket No. MJ-31101-TR-2428-2017, and Citation No. 4235541-2 corresponding to Docket No. MJ-31101-TR-2434-2017.
[2] See Citation No. 4235487-4 corresponding to Docket No. MDJ-31101-TR-2431-2017, Citation No. 4235544-5 corresponding to Docket No. MDJ-31101-TR-2435-2017, and Citation No. 4235546-0 corresponding to Docket No. MDJ-31101-TR-2437-2017.
[3] See Citation No. 4235350-0 corresponding to Docket No. MDJ-31101-TR-2426-2017.
[4] See Citation No. 4235488-5 corresponding to Docket No. MDJ-31101-TR-2432-2017, Citation No. 4235489-6 corresponding to Docket No. MDJ-31101-TR-2433-2017, and Citation No. 4235545-6 corresponding to Docket No. MDJ-31101-TR-2436-2017.

1

court costs. On October 18, 2017, Appellant, through her counsel, Kevin S. Santos, Esquire, filed a timely Notice of Appeal from Summary Criminal Conviction.

On February 13, 2018, Appellant filed a Motion to Suppress Evidence. A *de novo* summary appeal hearing was originally scheduled for February 16, 2018. However due to multiple continuance request, it was not until September 28, 2018 and November 30, 2018, that this Court held a *de novo* summary appeal hearing attended by V. Paul Bernardino, Esquire, for the Commonwealth, and James Nasatka, Esquire, for Appellant. On November 30, 2018, at the conclusion of the second day of the *de novo* summary appeal hearing, this Court found Appellant guilty of three counts of 75 Pa.C.S. § 1111(b) – Transfer of Ownership of Vehicles, three counts of 75 Pa.C.S. § 1119(b) – Application of Certificate of Title by Agent, one count of 75 Pa.C.S. § 1119(c)(1) – Persons Not Authorized to Hold Certificate of Title, and three counts of 75 Pa.C.S. § 1161(b) – Certificate of Salvage Required. The Commonwealth called Trooper Mark Rode (Trooper Rode) of the Pennsylvania State Police. See Notes of Testimony (N.T.), 9/28/2018, at 8:1–51:16. Julisa Roman and Appellant testified on behalf of Appellant. N.T., 9/28/2018, at 52:3-109:7; N.T., 11/30/2018, at 3:14–44:16.

Trooper Rode testified that he is a Vehicle Fraud Investigator and that his duties include "inspecting notaries, car dealers, inspection garages, just making sure they adhere to the Commonwealth rules and regulations as inspection stations, as notaries and the care business when -- and make sure that the titles are performed -- are executed properly." See N.T., 9/28/2018, at 8:7–24. Trooper Rode testified that on the afternoon of June 19, 2017, he went to A to Z Auto, to investigate a specific complaint (unrelated to this case), but that it is also his policy to inspect all the records of the facility. Id., at 9:16–10:9, 12:5–14:13. Trooper Rode indicated that part of his job is to do "random audits and inspections" of motor vehicle

2

businesses. Id., at 9:25–10:5. There he met with Julisa Roman, the Appellant's sister, who he asked to see the records related to vehicle tags and the titles for all vehicles that are held for sale. *Id.*, at 8:25–9:13, 10:15–11:7. He further testified that Julisa Roman provided him with documents related to vehicle tags, but said that Appellant, Sandra Roman, handled the title documents. *Id.*, at 11:13–25. Trooper Rode indicated that Julisa Roman called Appellant and asked her to come to the scene. *Id.*, at 11:13–16.

Appellant testified that she is the manager for A to Z Auto. *Id.*, at 63:7–10. Trooper Rode testified that when Appellant arrived, he told her that he wanted to review the title records to make sure A to Z Auto was in compliance with PennDOT requirements. *Id.*, at 13:23–14:5. Trooper Rode testified that he had authority under the audit provision of the Agent Services Agreement with PennDOT and under 75 Pa.C.S. § 6308 – Investigation by police officers. *Id.*, at 14:6–13. Trooper Rode testified that Appellant initially did not comply, but thereafter provided him with the documents that are the subject of the ten citations in this case. *Id.*, at 14:14–15:1.

### Citation No. 4235351-1 and Citation No. 4235432-5

Citation No. 4235351-1 pertains to a New York Certificate of Title for a Hyundai with VIN number KMHJG25F6YU198141. Appellant was charged with violating 75 Pa.C.S. § 1111(b) relating to transfer of ownership of vehicles. Trooper Rode testified that the listed owner on the title was Michelle Francisco, but that Appellant told him she purchased the vehicle four years ago. N.T., 9/28/2018, at 16:1–23; Comm. Ex. 2. On the Certificate of Title, Michelle Francisco signed her name as the "seller," but no one signed as the "buyer." See Comm. Ex. 2.

Citation No. 4235432-5, relates to the New Jersey Title for a Hyundai with VIN Number KMHJG35F0YU184225. Appellant was charged with violating 75 Pa.C.S. § 1111(b) relating to transfer of ownership of vehicles. Trooper Rode testified that the registered owner of this

3

vehicle was O'Briens Garage, but that Appellant told him she purchased the vehicle four years ago. N.T., 9/28/2018, at 26:9–27:4. Trooper Rode further testified that the back of the Certificate of Title is only signed by the "seller" and that the Bill of Sale attached to the Certificate of Title is dated May 11, 2014. *Id.*, at 27:4–9. Trooper Rode stated that this title is an "open title" and explained:

> An open title means when a title is going to be transferred form one person to another, the buyer and the seller need to sign the back of the title simultaneously. And when only one party signs the back of the title, usually it's the seller, and the buyer information is not listed, is open or there's no -- it only has seller information; hence, it's an open title.

*Id.*, at 27:10–18. Additionally, the Bill of Sale does not identify a "buyer" and is signed only by a representative of O'Briens Garage. See Comm. Ex. 4. Trooper Rode further testified that in a private auto sale, the application for title must be mailed to PennDOT within twenty days and that in a transaction with a dealership, the applicable time period is six months. N.T., 9/28/2018, at 29:22–30:2.

Appellant testified about the New York Certificate of Title for a Hyundai with VIN number KMHJG25F6YU198141 and the New Jersey Title for a Hyundai with VIN Number KMHJG35F0YU184225 at the same time. Appellant testified that the New York Certificate of Title went with a door that was used as a replacement part for the Hyundai with the New Jersey Certificate of Title. N.T., 11/30/2018, at 25:23–28:10. Appellant testified that she came into possession of the Certificate of Title that matched the door because the customer brought the paperwork to her. *Id.*, at 29:16–25. Appellant testified that the customer had the New York Certificate of Title for the door because the vehicle had been reconstructed and in Pennsylvania an enhanced inspection is required. *Id.*, at 30:1–7. Appellant explained that in order to do an enhanced inspection, you have to prove where the parts to the car came from. *Id.* at 30:1–15.

4

Appellant further testified that the New Jersey Title for the Hyundai with VIN Number KMHJG35F0YU184225 was a branded title, which means that the vehicle was in an accident and had been rebuilt. N.T., 11/30/2018, at 33:4–18. Appellant testified that although the Certificate of Title is not designated as a salvage title, she called PennDOT and they told her she could not upload the title because the Hyundai was involved in an accident in New Jersey and needed to go through the branded process. *Id.*, at 34:14–36:4. Appellant testified that the customer who brought all of this paperwork to her was Ricardo Rodriguez. *Id.*, at 35:18–21.

However, the New York Certificate of Title identifies Michelle Francisco as the owner and the New Jersey Certificate of Title identifies OBriens Garage as the owner. See Comm. Ex. 2 and Comm. Ex. 4. Both the New York Certificate of Title and the New Jersey Certificate of Title are signed by the respective owners as "seller," but neither certificate of title is signed by a "buyer." *Id.* The name Ricardo Rodriguez does not appear on either certificate of title. *Id.*

### Citation No. 4235541-2

Citation No. 4235541-2 pertains to a Pontiac with Pennsylvania Certificate of Title No. 69813919301. Appellant was charged with violating 75 Pa.C.S. § 1111(b) relating to transfer of ownership of vehicles. Trooper Rode testified Appellant told him she owned the vehicle for the past five years. N.T., 9/28/2018, at 42:5–8. Trooper Rode further testified that the back of the Certificate of Title is blank and that Appellant did not apply to have the title transferred to her name. *Id.* The Certificate of Title identifies Joseph A. Carazo as the registered owner of the vehicle. See Comm. Ex. 8. On cross-examination, Trooper Rode was asked if he was aware that the Appellant was employed by the owner to make long term repairs. N.T., 9/28/2018, at 42:14–19. Trooper Rode testified that when a car is taken in for repairs, there is no purpose to drop off the title. *Id.*, at 42:20–43:6. Trooper Rode further testified that Appellant did not provide him

5

with any supporting documentation including a power of attorney giving Appellant the right to dispose of the vehicle. *Id.*, at 43:8–19.

Appellant testified that Joey brought his Pontiac with Pennsylvania Certificate of Title No. 69813919301 to A to Z Auto in 2011. N.T., 11/30/2018, at 38:23–25. Appellant testified that Joey planned to do extensive modifications on the Pontiac over a ten to fifteen years. *Id.*, at 38:25–39:5. Appellant further stated that

> About a year and a half later, he would up getting into a little bit of trouble, and he got incarcerated. And before he did that, he left me power of attorney and the title just in case anything happened or his parents needed to sell it or anything like that. Then the car just sat for awhile. He came out after awhile, and we started again some repairs. Throughout the last, like, four to five years, it's you know, fix this, but this, you get that. That's it.

*Id.*, at 39:6–13. Appellant testified that she is not the owner of the Pontiac, but that Joseph Carazo is the owner. *Id.*, at 39:15–21. In support of her testimony, Appellant introduced a power of attorney signed by Joseph Carazo and dated July 18, 2017, approximately one month after the accident. See Def. Ex. 8. Appellant contended:

> Just for the record, I had another [power of] attorney made because, again, I still - - I still have possession of the vehicle. And Joey was in trouble and going away again. For the record, I have never told him that I owned that car. And I think he says there that I bought that car. Never would I tell him that. That was Joey's baby, a classic that he was redoing.

N.T., 11/30/2018, at 42:19–25. Appellant testified that she did not have any financial arrangement with Joseph Carazo and that he did not have any outstanding bills at A to Z Auto. *Id.*, at 43:7–14. Appellant further clarified that Joseph Carazo gave her the title to the car "in case I needed to do anything with the vehicle or in case he said, you know what, sell it or, you know, I need the money for bail, for whatever." *Id.*, at 44:12–15.

6

## Citation No. 4235487-4

Citation No. 4235487-4, pertains to the New York Certificate of Title for a Honda with VIN 2HGES26752H594889. Appellant was charged with violating 75 Pa.C.S. § 1119(b) relating to the application of certificate of title by an agent. Trooper Rode testified that this vehicle had an "open title" because only the seller signed the Certificate of Title. N.T., 9/28/2018, at 30:17–19. Trooper Rode further testified that Appellant told him the vehicle belonged to a customer. *Id.*, at 30:19–20. The New York Certificate of Title is only signed by the seller, Andrey Pekutskey. See Comm. Ex. 5. Appellant did not offer any testimony related to this citation.

## Citation No. 4235544-5

Citation No. 4235544-5, pertains to a Dodge with Pennsylvania Certificate of Title No. 57642258306. Appellant was charged with violating 75 Pa.C.S. § 1119(b) relating to the application of certificate of title by an agent. Trooper Rode testified that August D. Gebhardt is the registered owner of the vehicle. N.T., 9/28/2018, at 44:21–22. Trooper Rode further testified that August Gebhardt signed the back of the title as "seller," but that no one signed as the "buyer." *Id.*, at 44:23–45:1. Trooper Rode testified that Appellant said she owned the vehicle for at least six months. *Id.*, at 45:4–5, 46:1–6.

Appellant testified that the owner, August Gebhardt, brought the Dodge to A to Z Auto for repairs to the transmission, but then decided he was going to junk the vehicle. N.T., 9/28/2018, at 101:3–23. Appellant indicated that the vehicle was never going to be transferred to her, but that she had the title because the vehicle was being junked. *Id.*, at 101:19–25. Appellant testified that she did not ask August Gebhardt to sign the title and that it was already signed when he brought it to her. *Id.*, at 102:14–103:8. Appellant further testified that in order for her

7

to take the Dodge to the junkyard, she either needed the title or a power of attorney. *Id.*, at 102:24–103:8. Appellant further testified that August Gebhardt gave the title to her about one or two weeks before Trooper Rode visited A to Z Auto on June 19, 2017. *Id.*, at 103:16:20. Appellant further testified that she gave August Gebhardt an estimate of repairs, but did not bring that documentation to court. *Id.*, at 104:6–10. During cross-examination, Appellant stated that August Gebhardt never junked the Dodge, but instead found a buyer who purchased the vehicle for $ 300 to $ 500. *Id.*, at 106:6–20.

### Citation No. 4235546-0

Citation No. 4235546-0 relates to a Nissan with Pennsylvania Title No. 71705109302. Appellant was charged with violating 75 Pa.C.S. § 1119(b) relating to the application of certificate of title by an agent. Trooper Rode testified that the title to this vehicle is open because the back of the title is only signed by the "seller," Kristine Romero. N.T., 9/28/2018, at 48:13–18; see also Comm. Ex. 11. Trooper Rode further testified that Appellant told him she purchased the vehicle in April 2017. *Id.*, at 48:19–23.

Appellant testified that Kristine Romero brought the Nissan with Pennsylvania Title No. 71705109302 to A to Z Auto to do an engine swap, but that the replacement engine was bad and then Kristine Romero decided to junk the vehicle. N.T. 11/30/2018, at 4:8–14. Appellant testified that she did not own the vehicle, but that she had the title for the vehicle because it was going to be picked up and taken to the junkyard. *Id.*, at 4:15–21. Appellant testified that she was required to have the title in order to junk the vehicle. *Id.*, at 4:22:24. Appellant further testified that there was no bill or agreement as to payment for the engine swap, but that the estimated price of labor was about $ 600. *Id.*, at 7:17–8:10. Appellant indicated that when Kristine Romero decided to send the Nissan to the junkyard, a power of attorney was executed. *Id.*, at

8

8:11:17. However, Appellant did not provide the power of attorney to the Court for consideration. *Id.*, at 9:7–11. Appellant further testified that she told Trooper Rode that Kristine Romero was the owner of the Nissan. *Id.*, at 9:17–24. During cross-examination, Appellant testified that Kristine Romero did not sign the title to the Nissan. *Id.*, at 11:8–19, 13:14–25. However, Pennsylvania Title No. 71705109302 for the Nissan is signed by Kristine Romero as "seller." See Comm. Ex. 11. Appellant further testified that a tow truck driver took the Nissan to United Compression to be junked and that proof of ownership was not required as long as the title and the vehicle were both given to United Compression. N.T., 11/30/2018, at 14:1–16:11. Appellant further testified that she did not remember which tow truck company she used, but that the vehicle was junked for $ 280, and that the tow truck company kept $ 50. *Id.*, at 19:8–21:17. Appellant also indicated that a record of the transaction would be in the daily logs, but she did not submit those records to the Court for consideration. *Id.*, at 19:20–20:11.

### Citation No. 4235350-0

Citation No. 4235350-0 relates to a Nissan with Pennsylvania Title No. 68539000704. Appellant was charged with violating 75 Pa.C.S. § 1119(c)(1) relating to persons not authorized to hold certificate of title. Trooper Rode testified that dealers are not allowed to hold the title to a vehicle that the dealer does not own. N.T., 9/28/2018, at 23:10–18, 23:24–24:6. Trooper Rode further testified that Appellant would not tell him why she had this title. *Id.*, at 24:4–6. The listed owners of Pennsylvania Title No. 68539000704 are Dayerlyn Beatriz & Dayerlyn Beatriz Cruz. See Comm. Ex. 3.

Appellant testified that she is not the owner of the Nissan with Pennsylvania Title No. 68539000704. N.T., 9/28/2018, at 93:18–23. Appellant stated that A to Z Auto was originally hired by the owner, Dayerlyn Beatriz, to transfer the title about eighteen months ago, but

9

PennDOT made an error and then Dayerlyn Beatriz gave the title back to Julisa Roman to fix. *Id.*, at 93:24–94:9. Appellant indicated that A to Z Auto came back into possession of the title in April or May of 2017. *Id.*, at 96:1–10. Appellant testified that she did not have the vehicle, but only the title. *Id.*, at 96:13–17. Appellant further testified that Dayerlyn Beatriz was very upset and that Appellant was communicating with her about needing to come to the shop to sign paperwork. *Id.*, at 98:2–10. Although Appellant testified about numerous errors made by PennDOT related to the Nissan with Pennsylvania Title No. 68539000704, Appellant did not submit any of that paperwork to the Court for consideration. *Id.*, at 99:20–100:13.

### Citation No. 4235488-5

Citation No. 4235488-5 pertains to a Toyota with Pennsylvania Certificate of Title No. 62889909004. Appellant was charged with violating 75 Pa.C.S. § 1161(b) relating to when a certificate of salvage is required. Trooper Rode testified that this Certificate of Title is deficient because Appellant did not transfer the Certificate of Salvage into her name even though she bought the vehicle four years ago. N.T., 9/28/2018, at 35:25–36:4. Trooper Rode further testified that pursuant to Section 1161, the title shall be transferred "immediately," which Trooper Rode estimates to be within five days. *Id.*, at 36:5–10. The identified owner of the Certificate of Salvage is Metropolitan P&C. See Comm. Ex. 6. However, the back of the Certificate of Salvage is signed by the "seller," Jody M. Wyland as agent for Metropolitan P&C and the "buyer" Amanda McLain as agent for Loor Valet Auto Import. *Id.* Trooper Rode testified that Appellant told him she owns the car, not Loor Valet Auto Import. N.T., 9/28/2018, at 38:18–23.

Appellant testified that Loor Valet Auto Import is an exporting company based in the Dominican Republic that purchases vehicles at auction and drops them off at A to Z Auto for

10

repair or junking. N.T., 9/28/2018, at 80:4–14. Appellant testified that she did not own the Toyota with Pennsylvania Certificate of Title No. 62889909004 and that she did not make an application for Certificate of Title. *Id.*, at 80:21–25. Appellant testified that she was not required to apply for a Certificate of Title because the company already had one. *Id.*, at 81:1–8. Appellant testified that she has a power of attorney for Loor Valet, but no such power of attorney was submitted to the Court for consideration. *Id.*, at 82:19–83:2. Appellant further testified that she had possession of the title because if the vehicle was repaired and needed an enhanced inspection, then she would need the title documents on hand. *Id.*, at 84:12–18. Appellant further testified that the Toyota had a hole in the hood and needed a few parts, but that she did not have the repair work estimate paperwork with her. *Id.*, at 84:19–86:10.

### Citation No. 4235489-6

Citation No. 4235489-6, pertains to an Acura with Pennsylvania Certificate of Salvage No. 75217674701. Appellant was charged with violating 75 Pa.C.S. § 1161(b) relating to when a certificate of salvage is required. Trooper Rode testified that this Certificate of Salvage is deficient because there is only a "seller" signature, but no "buyer" signature. N.T., 9/28/2018, at 39:23–40:2. The Certificate of Salvage identifies Charly Valerio as the vehicle owner. See Comm. Ex. 7. Charly Valerio signed the back of the Certificate of Salvage as the "seller," but no one signed as the buyer. *Id.* Trooper Rode testified that Appellant told him she purchased the vehicle on November 12, 2015. N.T., 9/28/2018, at 40:1–2. The Bill of Sale identifies Charly M. Valerio as the "seller," but is not dated and does not identify a "buyer" or a purchase price. See Comm. Ex. 7. Appellant did not offer any testimony related to this citation.

### Citation No. 4235545-6

Citation No. 4235545-6 pertains to a Honda with Pennsylvania Certificate of Salvage No.

11

59071122402. Appellant was charged with violating 75 Pa.C.S. § 1161(b) relating to when a certificate of salvage is required. Trooper Rode testified that "purchaser" identified on the back of the title is Aquino Batista Auto Imp., but that Appellant told him she bought the vehicle in December 2016. N.T., 9/28/2018, at 46:21–24. Trooper Rode testified that Appellant should have immediately reassigned the Certificate of Salvage to her name. *Id.*, at 47:2–3. Trooper Rode further testified that Appellant did not tell him she was employed by Aquino Batista. *Id.*, at 47:15–20.

Appellant testified that she does not own the Honda with Pennsylvania Certificate of Salvage No. 59071122402, but that Aquino Batista purchased the car at auction and had it shipped to A to Z Auto. N.T., 9/28/2018, at 86:23–87:5. Appellant further stated that she worked for Aquino Batista and thus, did not apply for a salvage title for the Honda. *Id.*, at 87:6–16. During cross-examination, Appellant clarified that A to Z Auto repairs vehicles for Aquino Batista, but that he does not pay her health benefits, W-2 wages, or social security benefits. *Id.*, at 88:18–89:8. Appellant further confirmed that she is not Aquino Batista's employee, but rather that Aquino Batista contracts with her to perform repair work. *Id.*, at 89:9–90:22.

Julisa Roman, Appellant's sister, testified that she is a notary at A to Z Auto. N.T., 9/28/2018, at 52:16. Julisa Roman testified that on June 19, 2017, Trooper Rode came to A to Z Auto and asked her to pull records related to a title transfer. *Id.*, at 53:2–10. Julisa Roman indicated that Trooper Rode reviewed her PennDOT work and after he began to leave, he turned around and said that he wanted to see every title for the vehicles on the lot. *Id.* Julisa Roman stated that Trooper Rode did not say why he wanted to see all the records and that Trooper Rode did not say anything about "body shop audits." *Id.*, at 53:14–24. Julisa Roman did not give Trooper Rode access to the title, but instead called her sister, the Appellant. *Id.*, at 53:25–54:16.

12

During cross examination, Julisa Roman testified that sometimes, a salvage vehicle might sit on the lot for several years without transferring the title to the business's name. *Id.*, at 57:18–21.

Appellant also generally testified about her interactions with Trooper Rode. Appellant stated that he did not cite any authority for his search of the titles. See N.T., 9/28/2018, at 64:17–24. Appellant further testified that Trooper Rode "snatched" the folder of titles from her hand and then proceeded to call the Allentown Police. *Id.*, at 65:14–66:1. Appellant testified that Trooper Rode wanted her to open the desk drawer up again, but that she refused and told Trooper Rode to get a warrant. *Id.*, at 66:6–9. Appellant testified that after the Allentown Police Officer arrived, she spoke to him and stated that she didn't understand why Trooper Rode was "behaving the way that he's behaving." *Id.*, at 66:9–16. An Allentown Police Department Offense Report was generated and in the incident narrative, Officer Bryan Guzley stated

> Responded to the above location to assist PSP Bethlehem. Upon arrival on scene I spoke with the Trooper and he stated that he was doing audits on a body shop and the owner was giving him a hard time. I stoodby until he was finished his investigation. No further action taken.

See Def. Ex. 1. Appellant testified that she never heard Trooper Rode refer to his investigation as a "body shop audit." See N.T., 9/28/2018, at 68:22–24. Appellant further testified that Trooper Rode took the original documents and would not let her make copies. N.T., 9/28/2018, at 69:23–70:15.

Following the *de novo* summary appeal hearing, this Court found Appellant guilty of all ten offenses. For her sentence, Appellant was ordered to pay a total of $ 2,300.00 in fines plus court costs, and the costs of prosecution.

On December 27, 2018, twenty-seven days after the imposition of sentence in this matter, Appellant timely filed the instant Notice of Appeal to the Superior Court of Pennsylvania. In Appellant's Notice of Appeal, Appellant appealed all ten of this Court's Orders dated November

13

30, 2018. By Order of Court dated December 28, 2018, this Court directed Appellant to file and serve on this Court a Concise Statement of Matters Complained of on Appeal, pursuant to Pa.R.A.P. 1925(b)(1), within twenty-one days of the date of entry of the Order. That same date, this Court entered an Order for Transcript and Deposit directing Appellant to pay $ 427.50, representing 90% of the transcription fee by January 11, 2019, to ensure timely completion of the transcript and warned that "[t]he court reporter/court monitor shall not begin preparation of the transcript(s) until such deposit is received."

On January 16, 2018, five days after Appellant's payment was due for the transcript and three days before Appellant's Concise Statement of Matters Complained of on Appeal was due, Appellant filed a Motion for Extension of Time to File Concise Statement of Errors Complained of on Appeal. In her Motion, Appellant requested a fourteen-day extension of time because she was having difficulty obtaining funds to pay the required transcription fee. On January 24, 2019, this Court held a hearing and orally granted Appellant's Motion for Extension of Time. That same date, Appellant paid $ 475.00, representing 100% of the transcription fee. On January 29, 2019, the Official Court Reporter, Marjorie M. Lally, filed the Transcript in this matter. By Order dated January 31, 2019, the Court directed Appellant to file her Concise Statement of Errors Complained of on Appeal by February 1, 2019. Appellant timely filed her Concise Statement of Matters Complained of on Appeal on January 31, 2019.

In her Concise Statement of Errors Complained of on Appeal, Appellant raises twenty-six issues on appeal. The following is taken verbatim from Appellant's Concise Statement:

1. The trial court erred in denying the Defendant's Motion to Suppress evidence on the basis that the officer did not possess a search warrant or probable cause and there were no applicable exceptions to the rule requiring them in this case.

14

2. For a search to be valid, law enforcement must possess a valid search warrant, there must be exigent circumstances, or the person whose person or property is to be searched must give valid consent.

3. The trial court erred in ruling that the "Penndot Agreement" entered into evidence by the Commonwealth, gave the Trooper authority, through contractual consent, to search all records of the Defendant's business.

4. The trial court ignored that the Penndot Agreement specifically expresses the scope of searchable documents that it gives an officer exercising his authority under the Agreement to search.

5. The trial court ignored that the officer in the instant case admitted in both the summary trial and the summary appeal hearing that he had exercised his authority initially under the Penndot Agreement, then he went to leave, but then changed his mind and told the Defendant's business that it was "his policy" to search through the vehicle titles as well, which are not listed in the Penndot Agreement's scope of permissible documents to inspect.

6. The trial court erred in ruling that since the agreement was between the Defendant and Penndot, and certificates of title are issued by Penndot, that the agreement would cover titles as well.

7. The trial court erred in finding the Defendant guilty at Citations T 4235489-6, T 4235488-5, and T 4235545-6 of violating 75 Pa.C.S. § 1161(b)

8. The trial court ignored that the statute only requires someone who files an insurance claim on a totaled vehicle to obtain a salvage title for the vehicle in question, which the Defendant was in possession of.

9. The trial court erroneously found that the statute Defendant was cited under required each and every future transferee to transfer the salvage title into the name of the title holder.

10. The trial court erred in finding the Defendant guilty at Citations T 4235350-0, T 4235487-4, T 4235544-5, and T 4235546-0 of violating 42 Pa.C.S. §1119(b)(1) and §1119(c)(1).

11. The trial court erred in sustaining the objections of the Commonwealth and excluding the Defendant from admitting into evidence affidavits of vehicle owners attesting that the Defendant was in their employ and was therefore permitted under 75 Pa.C.S. §1119(c)(1) to hold the titles to these vehicles, which would have permitted her to hold the titles, thus making her not guilty of the above.

15

12. The Defendant made offers of proof for each affidavit that they were evidence of the declarant's (the vehicle owner's) state of mind (intent/motive) and were therefore an exception to the rule against hearsay as per Pennsylvania Rule of Evidence 803(3).

13. The trial court ruled that the declarants should have been in court to testify as to the content of the affidavits, ignoring that Rule 803(3) does not require the declarant to be present.

14. The trial court erroneously found that the affidavits were not admissible because they were prepared in anticipation of litigation.

15. The trial court ignored that the Defendant was not offering the affidavits as business records, but as evidence of the declarant state of mind, in which case it is irrelevant if the documents were prepared in anticipation of litigation under Rule 803(3).

16. Furthermore, the trial court erred at Citation 5487 listed above in that the title this Citation applied to stated on the certificate that it was a rebuilt/salvage title.

17. 75 Pa.C.S. §1119 makes no mention of certificates of salvage but only references certificates of title.

18. This indicates that the legislature did not intend to include certificates of salvage under the statute as they are referenced specifically as certificates of salvage in other portions of the Vehicle Code.

19. The trial court erred in finding the Defendant guilty at Citations T 4235351-1, T 4235541-2, and T 4235432-5 of violating 75 Pa. C.S. §1111(b).

20. With regard to the Citation ending in 5541, the trial court again sustained the objection of the Commonwealth and prohibited an affidavit from the vehicle owner from being introduced into evidence as hearsay.

21. The Defendant made an offer of proof seeking to admit the affidavit as circumstantial evidence of the declarant's state of mind under Pa. R. E. 803(3).

22. The trial court again erroneously held that the vehicle's owner was required to be present and testify, in direct contradiction of Pa. R. E. 803(3) which is not contingent on the declarant's availability.

23. With regard to the Citation ending in 5351 and 5432, the officer found a vehicle, the door of which had a different VIN number.

24. The trial court erred in ruling that the Defendant was required to transfer a title to a car door into her name.

16

25. The trial court erred in issuing verdicts of guilty to all ten (10) citations in that this verdict is against the weight of the evidence presented by both the Commonwealth and the Defendant.

26. The trial court found the Defendant guilty of citations that prohibit conduct that either did not apply to the Defendant as stated in the statute, and/or of conduct that the statute clearly permitted given certain circumstances.

See Appellant's Concise Stmt., ¶¶ 1–26. The Court notes initially, that a brief explanation for this Court's decision was set forth on the record at the conclusion of the *de novo* summary appeal hearing, and we incorporate them herein, as if fully set forth.[5] However, this Court adds the following supplemental discussion. Based upon Appellant's Concise Statement, it appears to this Court that Appellant's errors complained of on appeal can be grouped into six general categories. Each category of errors will be discussed in turn.

## Discussion

### First, Second, Third, Fourth, Fifth, and Sixth Contentions of Error

First, Appellant raises six contentions of error related to this Courts decision to deny Appellant's Motion to Suppress and determine that Trooper Rode had authority to examine the title documents in question. Appellant contends that Trooper Rode did not have a search warrant and that none of the exceptions to the warrant requirement applied in this case. See Appellant's Concise Stmt., ¶¶ 1,2. Appellant further argues that the PennDOT Agreement between the Commonwealth of Pennsylvania and A to Z Auto did not authorize the Trooper to search the title documents in question. *Id.*, ¶¶ 3–6.

As an initial matter, at the September 28, 2018 hearing, this Court briefly explained that Appellant's Motion to Suppress was denied because A to Z Auto is "an arm of the government subject to audit, without notice, of the records," because the investigatory authority pursuant to

---

[5] See Notes of Testimony (N.T.), 11/30/18, at 53:17–56:20.

17

the PennDOT Agreement may be expanded, and because Trooper Rode credibly testified about

his intent in performing an inspection of the title documents. See N.T., 9/28/2018, at 78:18–

79:2. This Court incorporates those reasons herein, as if fully set forth.

Additionally, the PennDOT Agreement clearly contemplates inspection of title

documents and enforcement of the regulations at issue in this case. Throughout the PennDOT

Agreement, the phrase "temporary registration cards, plates, permits, or other products

designated by the Department" is used to describe the documents that are subject to the

agreement. See Comm. Ex. 1, ¶¶ 1– 3, 6, 19–21, 24, 26. More specifically, the "Audits and

Inspection" provision of the PennDOT Agreement provides:

> The Department reserves the right to make unannounced visits to audit, observe and inspect Contractor's agent service operations. *Temporary registration plates and related documents shall be available for inspection, with or without notice, by authorized Commonwealth employees or designees, including the Pennsylvania State Police.* Records required by the Department to be maintained by the Contractor in carrying out the duties under this Agreement shall be subject to periodic inspection by authorized representatives of the Commonwealth or its designated agents under the following conditions:
> (1) Place – The inspection may be conducted at the issuing agent's established place of business.
> (2) Time – The inspection may be conducted during regular and usual business hours.
> (3) Scope – *The inspection may be limited to examination of the records, plates, permit, or other products designated by the Department, inventory which are subject to the record keeping requirement of this Agreement and Department regulations or, based on the initial findings, may be expanded to include investigation of violations of the other terms of this Agreement or Department regulations.*

See Comm. Ex. 1, ¶ 26 (emphasis added). Paragraph 26 of the PennDOT Agreement clearly

contemplates examination of documents beyond just registration and license plates. Specifically,

paragraph 26(3) permits an expanded investigation of "violations of the other terms of this

Agreement or Department regulations. *Id.*, ¶ 26. To that end, multiple provisions of the

18

PennDOT Agreement expressly require compliance with Chapter 11 of Title 75 of the Pennsylvania Consolidated Statutes.

For example, paragraph 12 of the PennDOT Agreement provides that A to Z Auto will "at the time of hiring and annually thereafter secure an affidavit from each person involved in providing the agent service that the person has read and understood the provisions of 75 Pa. C.S. Chapter[] 11(relating to certificate of title and security interests)...." Similarly, paragraph 28 of the PennDOT Agreement provides that the "Contractor and its employees will be bound by the provisions of 75 Pa. C.S. Chapter[] 11 (relating to certificate of title and security interests)...." In the list of "Prohibited Activity" that follows, item #18 references transactions involving the sale or transfer of a vehicle, and items #25 and #26 reference "documents related to an application for title."

Clearly, when all of the provisions of the PennDOT Agreement are read together, A to Z Auto and its' manager, Appellant, are obligated to maintain records related to title documents and have such documentation available for inspection by the Pennsylvania State Police. It appears to the Court that Trooper Rode had authority under the PennDOT Agreement to inspect both the documents related to "the tag side of the business" and the documents related to "the title side of the business." Trooper Rode credibly testified that it is his standard policy to perform an audit and inspection of a repair shop at the same time that he investigates a complaint about a repair shop. See N.T., 9/28/2018, at 9:10–15:1. Trooper Rode also testified that, in addition to the authority under the PennDOT Agreement, he has statutory authority pursuant to 75 Pa.C.S. § 6308 to inspect the records of A to Z Auto. *Id.*, at 14:6–13. This Court agrees.

In relevant part, 75 Pa.C.S. § 6308, entitled "Investigation by police officers," provides:

(c) Inspection.--Any police officer or authorized department employee may, during business hours or at any other time in which work is being conducted or

19

work is being performed, inspect any vehicle, or major component part for which records are required to be kept under subsection (d), in any garage or repair shop…for the purpose of:

...

(2) inspecting the records required to be kept under subsection (d).

...

(d) Records.—

(1) Every…repair shop…shall keep accurate records of the purchase, acquisition, sale and disposition of vehicles as required under sections…1111 (relating to transfer of ownership of vehicle,…1119 (relating to application for certificate of title by agent), 1161 (relating to certificate of salvage required)….

See 75 Pa.C.S. § 6308(c) and (d). Section 6308 clearly authorizes Officer Rode, as a member of the Pennsylvania State Police, to inspect the title documents and records maintained by A to Z Auto. The record clearly indicates that Officer Rode sought to inspect Appellant's records during business hours. N.T., 9/28/2018, at 8:25–10:14. Officer Rode credibly testified that he made his intentions clear to Appellant's sister, Julisa Roman, upon arrival at A to Z Auto. *Id.* The title documents that Officer Rode wanted to inspect are included in the plain language of Section 6308.

For all of these reasons, this Court denied Appellant's Motion to Suppress and determined that Officer Rode had authority to inspect the title documents that are the subject of the ten citations at issue in this case. Thus, Appellant's first, second, third, fourth, fifth, and sixth contentions of error are meritless.

<u>Seventh, Eighth, and Ninth Contentions of Error</u>

In her seventh, eighth, and ninth contentions of error, Appellant contends that this Court erred in finding her guilty of violating 75 Pa.C.S. § 1161(b) at Citation Nos. T 4235489-6, T 4235488-5, and T 4235545-6. In relevant part, 75 Pa.C.S. § 1161(b) provides:

An owner who transfers a vehicle to be destroyed or dismantled, salvaged, or recycled shall assign the certificate of title to the person to whom the vehicle is transferred. Except as provided in section 1163, the transferee shall immediately

20

present the assigned certificate of title to the department or an authorized agent of the department with an application for a certificate of salvage upon a form furnished and prescribed by the department.

75 Pa.C.S. § 1161(b).

### Citation No. 4235489-6

With respect to Citation No. 4235489-6, pertaining to an Acura with Pennsylvania Certificate of Salvage Title No. 75217674701, Trooper Rode credibly testified that the Certificate of Salvage is deficient because it is only signed by the "seller." See N.T., 9/28/2018, at 39:23–40:2. Section 1161(b) requires that the certificate of title be assigned from the owner to the transferee and that the transferee present the certificate of title to PennDOT. Here, the listed owner of the Acura with Pennsylvania Certificate of Salvage Title No. 75217674701 was Charly M. Valerio. See Comm. Ex. 7. Mr. Valerio signed the certificate of title as "seller," but no one signed as buyer. *Id.* Trooper Rode credibly testified that Appellant told him she purchased the vehicle on November 12, 2015. N.T., 9/28/2018, at 40:1–2. Appellant did not offer any testimony to contradict Trooper Rode's testimony. In fact, Appellant did not offer any testimony at all with respect to Citation No. 4235489-6. The evidence of record clearly demonstrates that Appellant did not sign the certificate of title or present it to PennDOT as required by 75 Pa.C.S. § 1161(b).

### Citation No. 4235488-5

Similarly, with respect to Citation No. 4235488-5, pertaining to a Toyota with Pennsylvania Certificate of Title No. 62889909004, Trooper Rode credibly testified that this Certificate of Title is deficient because Appellant did not transfer the Certificate of Salvage into her name even though she bought the vehicle four years ago. N.T., 9/28/2018, at 35:25–36:4. The identified owner on the Certificate of Salvage is Metropolitan P&C. See Comm. Ex. 6.

21

However, the back of the Certificate of Salvage is signed by the "seller," Jody M. Wyland as agent for Metropolitan P&C and the "buyer" Amanda McLain as agent for Loor Valet Auto Import. *Id.* Trooper Rode testified that Appellant told him she owns the car, not Loor Valet Auto Import. N.T., 9/28/2018, at 38:18–23. Appellant testified that she was not required to apply for a Certificate of Title because Loor Valet already had one and because she has a power of attorney for Loor Valet. *Id.*, at 81:1–8, 82:19–83:2. However, no such power of attorney was submitted to the Court for consideration. Appellant failed to produce any evidence to corroborate her claim. The reliable evidence of record demonstrates that Appellant owned the Toyota, but did not sign the certificate of title as transferee or immediately present the assigned certificate of title to PennDOT as required by 75 Pa.C.S. § 1161.

**Citation No. 4235545-6**

Additionally, with respect to Citation No. 4235545-6, pertaining to a Honda with Pennsylvania Certificate of Salvage No. 59071122402, Trooper Rode credibly testified that the "purchaser" identified on the back of the title is Aquino Batista Auto Imp., but that Appellant told him she bought the vehicle in December 2016. N.T., 9/28/2018, at 46:21–24. Trooper Rode testified that Appellant should have immediately reassigned the Certificate of Salvage to her name. *Id.*, at 47:2–3. On this issue, Appellant testified that she does not own the Honda with Pennsylvania Certificate of Salvage No. 59071122402, but that Aquino Batista purchased the car at auction and had it shipped to A to Z Auto. N.T., 9/28/2018, at 86:23–87:5. Appellant further stated that she was worked for Aquino Batista and that she did not apply for a salvage title for the Honda. *Id.*, at 87:6–16. However, Appellant is not Aquino Batista's employee. *Id.* at 88:18–89:8, 89:9–90:22. Moreover, Appellant did not produce any evidence to support her testimony that A to Z Auto was repairing the Honda. Trooper Rode credibly testified that Appellant

22

purchased the vehicle in December 2016. The reliable evidence of record demonstrates that Appellant owned the Honda, but did not sign the certificate of title as transferee or immediately present the assigned certificate of title to PennDOT as required by 75 Pa.C.S. § 1161.

Finally, Appellant's contentions that 75 Pa.C.S. § 1161 "only requires someone who files an insurance claim on a totaled vehicle to obtain a salvage title for the vehicle in question" and does not require "each and every future transferee to transfer the salvage title into the name of the title holder" are untenable. The plain language of 75 Pa.C.S. § 1161(b) states "an owner who transfers a vehicle to be destroyed or dismantled, salvaged or recycled shall assign the certificate of title to the person to whom the vehicle is transferred." Section 1161(b) does not differentiate the original owner from subsequent owners, but rather treats all owners the same. Moreover, the back of a certificate of salvage has multiple signature blocks—signature block A is labeled "assignment of salvage" while signature block B is labeled "*re-assignment* of salvage by a person/registered dealer or salvor." See e.g. Comm. Ex. 10 (emphasis added). The certificate of salvage itself clearly contemplates that every time a salvage vehicle changes ownership, the transferee must transfer the salvage title into his or her name. Although 75 Pa.C.S. § 1161(b) does provide additional carveouts for insurers, those rules provide clarifications of or exceptions to the general rule. See 75 Pa.C.S. § 1161(b).

For all of these reasons, Appellant's seventh, eighth, and ninth contentions of error are meritless.

### Tenth, Sixteenth, Seventeenth, and Eighteenth Contentions of Error

In her tenth, sixteenth, seventeenth, and eighteenth contentions of error, Appellant contends that this Court erred in finding her guilty of violating 75 Pa.C.S. § 1119 at Citation

23

Nos. T 4235350-0, T 4235487-4, T 4235544-5, and T 4235546-0. In relevant part, 75 Pa.C.S. §

1119 provides:

> (b) Certificate not to be assigned in blank.--*No person shall* make application for, or assign or *physically possess, a certificate of title*, or direct or allow another person in his employ or control to make application for, or assign or physically possess, a certificate of title, *unless the name of the transferee is placed on the assignment of certificate of title simultaneously with the name of the transferor and duly notarized.*
>
> . . .
> (c) Persons authorized to hold certificate.--
>> (1) No person shall receive, obtain or hold a certificate of title recorded in the name of another person for the other person who is not in the regular employ of, or not a member of the family of, the other person.

75 Pa.C.S. § 1119(b) and (c)(emphasis added).

**Citation No. 4235487-4**

With respect to Citation No. 4235487-4, pertaining to the New York Certificate of Title

for a Honda with VIN 2HGES26752H594889, Trooper Rode credibly testified that this vehicle

had an "open title" because only the seller signed the Certificate of Title. N.T., 9/28/2018, at

30:17–19. Trooper Rode further testified that Appellant told him the vehicle belonged to a

customer. *Id.*, at 30:19–20. The New York Certificate of Title is only signed by the seller,

Andrey Pekutskey. See Comm. Ex. 5. Appellant did not offer any testimony to contradict

Trooper Rode's testimony. In fact, Appellant did not offer any testimony at all with respect to

Citation No. 4235487-4. The evidence of record clearly demonstrates that Appellant did not sign

the certificate of title simultaneously with the name of the transferor/seller, Andrey Pekutskey,

and that Appellant was physically in possession of an "open title" in violation of 75 Pa.C.S.

§ 1119(b).

The Court further notes that Appellant's argument that Section 1119(b) does not apply to

certificates of salvage is irrelevant. See Appellant's Concise Stmt., ¶¶ 16–18. As previously

24

noted, the certificate of title at issue in Citation No. 4235487–4 is a New York Certificate of Title for a Honda with VIN 2HGES26752H594889. See Comm. Ex. 5. The top of the document specifically says "Certificate of Title" in large size font. See Comm. Ex. 5. While there is a small notation in the text of the document that states "Rebuilt Salvage/NY", it is unclear the Court what the notation means. Appellant did not offer any testimony with respect to Citation No. 4235487-4.

**Citation No. 4235544-5**

With respect to Citation No. 4235544-5, pertaining to a Dodge with Pennsylvania Certificate of Title No. 57642258306, Trooper Rode credibly testified that August D. Gebhardt is the registered owner of the vehicle and that Mr. Gebhardt signed the back of the title as "seller," but that no one signed as the "buyer." N.T., 9/28/2018, at 44:21–45:1. Trooper Rode further testified that Appellant said she owned the vehicle for at least six months. *Id.*, at 45:4–5, 46:1–6. Appellant testified that Mr. Gebhardt brought the Dodge to A to Z Auto for repairs to the transmission, but then decided he was going to junk the vehicle. N.T., 9/28/2018, at 101:3–23. Appellant indicated that the vehicle was never going to be transferred to her, but that she had the title because the vehicle was being junked. *Id.*, at 101:19–25. Appellant testified that she did not ask August Gebhardt to sign the title and that it was already signed when he brought it to her. *Id.*, at 102:14–103:8. Appellant further testified that in order for her to take the Dodge to the junkyard, she either needed the title or a power of attorney. *Id.*, at 102:24–103:8. Appellant further testified that she gave August Gebhardt an estimate of repairs; she did not bring that documentation to court. *Id.*, at 104:6–10. During cross-examination, Appellant stated that August Gebhardt never junked the Dodge, but instead found a buyer who purchased the vehicle for $ 300 to $ 500. *Id.*, at 106:6–20. Appellant's testimony was not credible. Appellant did not

25

have any documentation to support her assertion that Mr. Gebhardt brought the vehicle to A to Z Auto for repairs and thereafter, decided to junk it.

The credible evidence of record clearly demonstrates that Appellant did not sign the certificate of title simultaneously with the name of the transferor/seller, August Gebhardt, and that Appellant was physically in possession of an "open title" in violation of 75 Pa.C.S. § 1119(b).

**Citation No. 4235546-0**

Similarly, with respect to Citation No. 4235546-0, pertaining to a Nissan with Pennsylvania Title No. 71705109302, Trooper Rode credibly testified that the title to this vehicle is "open" because the back of the title is only signed by the "seller," Kristine Romero. N.T., 9/28/2018, at 48:13–18; see also Comm. Ex. 11. Trooper Rode further testified that Appellant told him she purchased the vehicle in April 2017. *Id.*, at 48:19–23.

Appellant testified that Kristine Romero brought the Nissan with Pennsylvania Title No. 71705109302 to A to Z Auto to do an engine swap, but that the replacement engine was bad and then Kristine Romero decided to junk the vehicle. N.T. 11/30/2018, at 4:8–14. Appellant testified that she did not own the vehicle, but that she had the title for the vehicle because it was going to be picked up and taken to the junkyard. *Id.*, at 4:15–21. Appellant testified that she was required to have the title in order to junk the vehicle. *Id.*, at 4:22:24. Appellant further testified that Kristine Romero executed a power of attorney giving Appellant authority to act in regard to the vehicle. *Id.*, at 8:11:17. However, Appellant did not provide the power of attorney to the Court for consideration. *Id.*, at 9:7–11. Appellant also failed to provide any documentation related to the estimated costs for the engine swap. During cross-examination, Appellant implausibly testified that Kristine Romero did not sign the title to the Nissan. *Id.*, at 11:8–19,

26

13:14–25. Contrary to Appellant's testimony, Pennsylvania Title No. 71705109302 for the Nissan is signed by Kristine Romero as "seller." See Comm. Ex. 11.

Appellant's testimony was not credible or reliable. Appellant had no corroborating evidence to support her claims. The credible evidence of record clearly demonstrates that Appellant did not sign the certificate of title simultaneously with the name of the transferor/seller, Kristine Romero, and that Appellant was physically in possession of an "open title" in violation of 75 Pa.C.S. § 1119(b).

### Citation No. 4235350-0

Finally, with respect to Citation No. 4235350-0, pertaining to a Nissan with Pennsylvania Title No. 68539000704, Trooper Rode credibly testified that dealers are not allowed to hold the title to a vehicle that the dealer does not own. N.T., 9/28/2018, at 23:10–18, 23:24–24:6. Trooper Rode further testified that Appellant would not tell him why she had this title. *Id.*, at 24:4–6. The listed owners of Pennsylvania Title No. 68539000704 are Dayerlyn Beatriz & Dayerlyn Beatriz Cruz. See Comm. Ex. 3. Appellant testified that she is not the owner of the Nissan with Pennsylvania Title No. 68539000704, but that Dayerlyn Beatriz hired A to Z Auto to correct numerous errors made by PennDOT. N.T., 9/28/2018, at 93:18–94:9. Although Appellant testified about numerous errors made by PennDOT related to the Nissan with Pennsylvania Title No. 68539000704, Appellant did not submit any of that paperwork to the Court for consideration. *Id.*, at 99:20–100:13.

Appellant had no corroborating evidence to support her claims. The credible evidence of record clearly demonstrates that Appellant did not sign the certificate of title simultaneously with the name of the transferor/seller, Kristine Romero and that Appellant was physically in possession of an "open title." Appellant was not "in the regular employ of, or…a member of the

27

family of" Dayerlyn Beatriz. Pursuant to 75 Pa.C.S. § 1119(c), Appellant was not authorized to hold Dayerlyn Beatriz's certificate of title.

For all of these reasons, Appellant's tenth, sixteenth, seventeenth, and eighteenth contentions of error are without merit.

### Eleventh, Twelfth, Thirteenth, Fourteenth, Fifteenth, Twentieth, Twenty-First, and Twenty-Second Contentions of Error

Next, Appellant raises eight contentions of error related to this Court's decision not to admit into evidence affidavits prepared by vehicle owners for the titles in question. As an initial matter, the determination of whether to admit or exclude evidence is within the sound discretion of the trial judge and that determination will only be disturbed upon a showing of a clear abuse of discretion or actual prejudice. *Engle v. West Penn Power Co.*, 598 A.2d 290, 299 (Pa.Super. 1991); *Den-Tal-Ez, Inc. v. Siemens Capital Corp.*, 566 A.2d 1214, 1233 (Pa.Super. 1989).

In this case, Appellant sought to introduce four affidavits to support her claims that she was in possession of the title documents because she was under the employ of her customers. Defendant's Exhibit 2 is an undated affidavit of fact signed by Dayerlyn Beatriz Cruz that references the Nissan with Pennsylvania Title No. 68539000704 that is the subject of Citation No. 4235350-0. Defendant's Exhibit 3 is an affidavit of fact signed by Kristine I. Romero that references the Nissan with Pennsylvania Title No. 71705109302 that is the subject of Citation No. 4235546-0. Kristine I. Romero's affidavit of fact is dated September 12, 2017, approximately three months after Trooper Rode issued the citations to Appellant. Defendant's Exhibit 4 is an affidavit of fact signed by August D. Gebhardt Sr. that references the Dodge with Pennsylvania Certificate of Title No. 57642258306 that is the subject of Citation No. 4235544-5. August D. Gebhardt Sr.'s affidavit of fact is dated September 20, 2017, approximately three

28

months after Trooper Rode issued the citations to Appellant. Defendant's Exhibit 7 is an affidavit of fact signed by Joseph A. Carazo that references the Pontiac with Pennsylvania Certificate of Title No. 69813919301 that is the subject of Citation No. 4235541-2. Joseph A. Carazo's affidavit of fact is dated September 18, 2017, approximately three months after Trooper Rode issued the citations to Appellant.

This Court sustained the Commonwealth's objection that the affidavits were hearsay. See N.T., 9/28/2018, at 94:10–97:25; N.T., 11/30/2018, at 5:5–7:12. Hearsay is "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). Unless an exception applies, hearsay is not admissible under the Pennsylvania Rules of Evidence. Pa.R.E. 802.

Here, Appellant contends that the affidavits do not constitute hearsay because they are evidence of the declarant's then-existing state of mind and are thus permissible pursuant to Pa.R.E. 803(3). In relevant part, Pa.R.E. 803 provides as follows:

> [t]he following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> . . .
>
> (3) Then-Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then-existing state of mind (such as motive, intent or plan) or emotional sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove a fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Pa.R.E. 803(3). However, the Superior Court of Pennsylvania has clarified that the statement "must be instinctive, rather than deliberate." *Schmalz v. Manufacturers & Traders Trust Co.*, 67 A.3d 800, 804 (Pa.Super. 2013)(internal quotation marks omitted). Furthermore, "statements of

29

the declarant's then existing state of mind are considered reliable based on their spontaneity."
*Id.* (citing *Commonwealth v. Hess*, 548 A.2d 582, 585 (Pa.Super. 1988)).

Three of the affidavits that Appellant sought to introduce were prepared in September 2017, nearly three months after Trooper Rode issued Appellant the ten citations that are the subject of this appeal. See Def. Ex. 3; Def. Ex. 4; Def. Ex. 7. The other affidavit is not dated. See Def. Ex. 2. Moreover, the affidavits were prepared in preparation of the September 26, 2017, summary trial held before Magisterial District Judge Patricia Engler. For example, in the Affidavit of Fact signed by Dayerlyn Beatriz Cruz, the closing paragraph states, "[t]his affidavit of fact was created with full knowledge of the incident with the Bethlehem state trooper and the current investigation that is ongoing...." See Def. Ex. 2. The four affidavits that Appellant sought to introduce are deliberate, not instinctive because they were prepared in preparation of litigation after Appellant was cited. See *Schmalz*, 67 A.3d at 804. The statements made in the four affidavits are unreliable because they lack spontaneity. *Id.* The affiants signed the statements with full knowledge of the citations that had been filed against Appellant. The affidavits were not made at the time each title/vehicle was purportedly left at A to Z Auto.

For all of these reasons, the affidavits that Appellant sought to introduce constituted hearsay and were inadmissible. Thus, Appellant's eleventh, twelfth, thirteenth, fourteenth, fifteenth, twentieth, twenty-first, and twenty-second contentions of error are without merit.

### Nineteenth, Twenty-Third, and Twenty-Fourth Contentions of Error

In her nineteenth, twenty-third, and twenty-fourth contentions of error, Appellant contends that this Court erred in finding her guilty of violating 75 Pa.C.S. § 1111 at Citation Nos. T 4235351-1, T 4235541-2, and T 4235432-5. In relevant part, 75 Pa.C.S. § 1111(b) provides, "the transferee shall, within 20 days of the assignment or reassignment of the

30

certificate of title, apply for a new title by presenting to the department the properly completed certificate of title, sworn to before a notary public or other officer empowered to administer oaths...."

### Citation No. 4235351-1

With respect to Citation No. 4235351-1, pertaining to a New York Certificate of Title for a Hyundai with VIN number KMHJG25F6YU198141, Trooper Rode credibly testified that the listed owner on the title was Michelle Francisco, but that Appellant told him she purchased the vehicle four years ago. N.T., 9/28/2018, at 16:1–23; Comm. Ex. 2. On the Certificate of Title, Michelle Francisco signed her name as the "seller," but no one signed as the "buyer." See Comm. Ex. 2. With respect to Citation No. 4235432-5, pertaining to the New Jersey Title for a Hyundai with VIN Number KMHJG35F0YU184225, Trooper Rode credibly testified that the registered owner of this vehicle was O'Briens Garage, but that Appellant told him she purchased the vehicle four years ago. N.T., 9/28/2018, at 26:9–27:4. Trooper Rode further testified that the back of the Certificate of Title is only signed by the "seller" and that the Bill of Sale attached to the Certificate of Title is dated May 11, 2014. *Id.*, at 27:4–9. Trooper Rode stated that this title is an "open title" and explained:

> An open title means when a title is going to be transferred form one person to another, the buyer and the seller need to sign the back of the title simultaneously. And when only one party signs the back of the title, usually it's the seller, and the buyer information is not listed, is open or there's no -- it only has seller information; hence, it's an open title.

*Id.*, at 27:10–18. Additionally, the Bill of Sale does not identify a "buyer" and is signed only by a representative of O'Briens Garage. See Comm. Ex. 4. Trooper Rode further testified that in a private auto sale, the application for title must be mailed to PennDOT within twenty days and

31

that in a transaction with a dealership, the applicable time period is six months. N.T., 9/28/2018, at 29:22–30:2.

Appellant testified about the New York Certificate of Title for a Hyundai with VIN number KMHJG25F6YU198141 and the New Jersey Title for a Hyundai with VIN Number KMHJG35F0YU184225 at the same time. Appellant testified that the New York Certificate of Title went with a door that was used as a replacement part for the Hyundai with the New Jersey Certificate of Title. N.T., 11/30/2018, at 25:23–28:10. Appellant generally contended that a customer named Ricardo Rodriguez brought all of the paperwork to her because she needed to do an enhanced inspection of the vehicle. *Id.*, at 29:16–30:15, 34:14–36:4.

However, Appellant's testimony is unsubstantiated by the credible evidence of record. The New York Certificate of Title identifies Michelle Francisco as the owner and the New Jersey Certificate of Title identifies OBriens Garage as the owner. See Comm. Ex. 2 and Comm. Ex. 4. Both the New York Certificate of Title and the New Jersey Certificate of Title are signed by the respective owners as "seller," but neither certificate of title is signed by a "buyer." *Id.* The name Ricardo Rodriguez does not appear on either certificate of title. *Id.* The evidence of record clearly demonstrates that Appellant did not sign either of the two certificates of title in her possession and that she failed to timely apply for a new title with PennDOT in violation of 75 Pa.C.S. § 1111(b).

### Citation No. 4235541-2

Similarly, with respect to Citation No. 4235541-2, pertaining to a Pontiac with Pennsylvania Certificate of Title No. 69813919301, Trooper Rode credibly testified that Appellant told him she owned the vehicle for the past five years. N.T., 9/28/2018, at 42:5–8. Trooper Rode further testified that the back of the Certificate of Title is blank and that Appellant

32

did not apply to have the title transferred to her name. *Id.* The Certificate of Title identifies Joseph A. Carazo as the registered owner of the vehicle. See Comm. Ex. 8. Trooper Rode further testified that Appellant did not provide him with any supporting documentation, including a power of attorney giving Appellant the right to dispose of the vehicle. *Id.*, at 43:8–19. Appellant generally testified that Mr. Carazo brought his Pontiac to A to Z Auto in 2011 to do extensive modification work. N.T., 11/30/2018, at 38:23–39:5. Appellant further stated that Mr. Carazo became incarcerated and signed a power of attorney in case she needed to sell the vehicle. *Id.*, at 39:6–13, 44:12–15. In support of her testimony, Appellant introduced a power of attorney signed by Mr. Carazo and dated July 18, 2017, approximately one month after the accident. See Def. Ex. 8. The Court gives little weight to the 2017 power of attorney because it was prepared after Mr. Carazo was fully informed of Appellant's citations. Appellant contended that the original power of attorney was signed in 2012. See N.T., 11/30/2018, at 41:17–19. However, Appellant did not provide a copy of the 2012 power of attorney to the Court.

The credible evidence of record demonstrates that Appellant did not sign the certificate of title for the Pontiac in her possession and that she failed to timely apply for a new title with PennDOT in violation of 75 Pa.C.S. § 1111(b).

Twenty-Fifth and Twenty-Sixth Contentions of Error

Finally, Appellant raises two general contentions of error related to this Court's verdict. In her twenty-fifth contention of error, Appellant contends that all ten of this Court's guilty verdicts are against the weight of evidence. See Appellant's Concise Stmt., ¶ 25. In her twenty-sixth contention of error, Appellant contends that either she was not covered by the particular statutes or that her conduct was permitted by the statutes in question. *Id.*, ¶ 26.

The Court notes at the outset that a challenge to the weight of evidence "concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Widmer,* 744 A.2d 745, 751 (Pa. 2000). It is well settled that "[t]he weight of the evidence is a matter exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Cox,* 72 A.3d 719, 722 (Pa.Super. 2013) (citing *Commonwealth v. Forbes,* 867 A.2d 1268, 1273–74 (Pa.Super. 2005). The Pennsylvania Superior Court has also reiterated the standard of review applicable to a weight of the evidence challenge as:

> A true "weight of the evidence" claim contends the verdict is a product of speculation or conjecture. Such a claim requires a new trial only when the verdict is so contrary to the evidence as to shock one's sense of justice. A decision regarding the weight of the evidence is within the sound discretion of the trial judge whose decision will not be reversed on appeal absent an abuse of that discretion.

*Commonwealth v. Dougherty,* 679 A.2d 779, 785 (Pa.Super. 1996)(internal citations omitted).

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay,* 64 A.3d 1049, 1055 (Pa. 2013) (quoting *Widmer,* 744 A.2d at 753).

In addition, the United States Supreme Court holds that the "'weight of the evidence' refers to 'a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.'" *Tibbs v. Florida,* 457 U.S. 31, 37–38 (1982)(alteration in original). With a weight of the evidence claim, there is no obligation to regard the evidence in the light most favorable to the verdict winner. *Tibbs,* 457 U.S. at 38 n.11.

34

"In order to warrant the grant of a new trial the court must do more than merely assess the credibility of the witnesses. The judge must establish that the verdict was irreconcilably contradictory to incontrovertible facts, human experience of the laws of nature or based on mere conjecture." *Widmer*, 744 A.2d at 752 (internal citation omitted)(internal quotation marks omitted). In the case at hand, this substantial burden has not been met.

This Court found Trooper Rode to be an honest and forthright witness. Trooper Rode's testimony was corroborated by the PennDOT agreement and the title documents submitted into the evidentiary record before this Court. Conversely, this Court found Appellant's testimony implausible and unsubstantiated. Appellant's testimony was vague and lacked certainty. At times, Appellant's version of the facts changed. Appellant did not have any admissible documents or records to corroborate her version of events. Appellant did not produce any repair logs, bills, or estimates to support her general contention that she was in possession of the titles in question because the vehicles were in need of repair. Appellant has not demonstrated that this Court's determination of guilt is so contrary to the evidence as to shock one's sense of justice. Thus, Appellant's twenty-fifth and twenty-sixth contentions of error are without merit.

## Conclusion

For all of the aforementioned reasons, this Court respectfully requests that its Orders of Sentence dated November 30, 2018 be affirmed.

BY THE COURT:

**Michele A. Varricchio, J.**

35

DATE: 2/27/2019 INITIALS: *AMC*
I/O: *DA*
E-MAIL: *Atty Santos*
PERSONAL:
REGULAR MAIL:
OTHER: